UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED
IN CLERK'S OFFICE
BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA

NOV 30 2012 PM03:45

M. REGINA THOMAS
CLERK

Jackie Dukes
DEPUTY CLERK

IN RE:                                          )        CASE NO. 09-69716-WLH
                                                )
SAMMY L. RICHARDS,                              )        CHAPTER 13
                                                )
           Debtor.                              )        JUDGE WENDY L. HAGENAU
_____                )
                                                )
SAMMY L. RICHARDS,                              )
                                                )
           Plaintiff,                           )
                                                )
v.                                              )        ADV. PROC. NO. 12-5345
                                                )
WELLS FARGO NATIONAL BANK,                      )
a/k/a Wells Fargo Bank, N.A., and               )
McCULLA RAYMOR, PC,                             )
                                                )
           Defendants.                          )
_____                )

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff Sammy Richards, and files this his Second Amended
Complaint, respectfully showing this Honorable Court the following:

1.

Subject to this Court's Order entered on November 21, 2012 (Case 12-05345-wlh, Doc
[26]), Plaintiff incorporates all Paragraphs and Prayers of his Adversary Complaint filed on July 30, 2012
(Case 12-05345-wlh, Doc [5]). In addition, Plaintiff states as follows:

2.

A Bloomberg screenshot indicates that Wells Fargo Bank, N.A. does not own or hold
Plaintiff's Note in its individual capacity, but that Plaintiff's Note collateralizes Mortgage-
Backed Securities issued by Structured Asset Securities Corporation ("SASC") and held in a

trust identified as Series 2007-RF1 (the "Trust"). Additionally, research performed on the SEC's

website reveals that the Trust has been a part of at least two purchase or repurchase agreements.

(See **Exhibit "C"**). In spite of this, Wells claimed to be a secured creditor in Plaintiff's Chapter

13 bankruptcy.

3.

Plaintiff's Chapter 13 Plan indicates that post-petition payments to Wells were to be paid

as they came due.

4.

Payments to Wells were due on the first of the month with a grace period extending

through the 15th. Payments not received by the 15th of the month were assessed a late charge.

5.

The Customer Account Activity Statement submitted to Plaintiff by Wells reveals that

Plaintiff was assessed late charges in May, June, and July of 2009 even though he was not late

for any of these months. (See **Exhibit "A"**).

6.

Wells inexplicably held Plaintiff's timely payment due in May of 2010 for several weeks,

and did not post it to Plaintiff's payment ledger until June 14, 2010. As a result, Plaintiff

appeared to be a month and a half behind. (See **Ex. "A"**).

7.

Plaintiff mailed a check on August 10, 2010 in the amount of $948.94 to Wells. This

check was not posted to Plaintiff's payment ledger until August 18, 2010. (See **Ex. "A"**; **Exhibit

"B"**).

8.

Plaintiff mailed a check on September 15, 2010 in the amount of $962.31 to Wells. (See **Ex. "B"**). Plaintiff called Wells on or about September 27, 2010 to determine whether Wells received the payment. Wells represented to Plaintiff that it had not received the payment.

9.

Now convinced that Wells was purposely withholding payments so that it could make Plaintiff appear to be behind in order to seek relief from stay, Plaintiff immediately cancelled the check sent on September 15th and sent a second check on September 27, 2010. (See **Ex. "B"**).

10.

On September 28, 2010, McCalla filed a Motion for Relief from Stay. In the Motion, McCalla alleged that Plaintiff had not paid the payment that was due in August 2010 in the amount of $948.94, nor the payment that was due in September 2010 in the amount of $962.31.

11.

The CAAS clearly indicates that the payment for August 2010 in the amount of $948.94 cleared on August 18, 2010—more than a month before McCalla's Motion was filed.

12.

The September 2010 payment in the amount of $962.31 posted to Plaintiff's account on October 1, 2010.

13.

McCalla admitted at the hearing on November 13, 2012 that it had a copy of the SAAC. Therefore, it had knowledge of the precise dates on which Plaintiff's payments had posted.

14.

Wells had knowledge of the SAAC, as it is a business record of Wells.

15.

Despite knowing that their asserted grounds for seeking relief from the stay were defective more than two weeks prior to the October 20th hearing on the Motion, Wells and McCalla continued to pursue relief from stay.

16.

In a hearing held in April of 2012, counsel for Wells asserted that Plaintiff was in default because the last two payments appearing on the SAAC were applied to May and June of 2010. See **Exhibit "D"** at 7; **Ex. "A"**). As Plaintiff was two months behind when his bankruptcy began and was purportedly two month behind in post-petition payments (because his payments were being wrongfully held), this was only possible if post-petition payments were being applied to pre-petition arrearage.

## COUNT II
## Fed. R. Bankr. Proc. 9011(c)(1)(B) ("Inherent Authority") Sanctions (as to Wells and McCalla) and 11 U.S.C. 362(k) Sanctions (as to Wells)

16.

Pursuant to Fed. R. Bankr. Proc. 9011(b)(3), Wells and McCalla were required to inform this Court that the circumstances precipitating the filing of the Motion for Relief from Stay had changed. Defendants willfully failed to do this.

17.

Pursuant to GA Bar Rule 3.3(a)(1), (2), and (4), and 3.3(d), McCalla was required to inform this Court that the circumstances precipitating the filing of the Motion for Relief from Stay had changed. McCalla willfully failed to do this.

18.

This Court has inherent power to sanction Defendants for engaging in this act; and Plaintiff requests that this Court sanction Defendants for willfully failing to disclose all material facts to this Court and wrongfully continuing to pursue relief from the stay.

19.

Additionally, this Court should sanction Wells pursuant to its inherent authority for purposely holding Plaintiff's payments so that it would appear on his ledger that he was behind in his post-petition payments, thereby giving Wells a justification to seek relief from the automatic stay.

20.

Further, the statement made by counsel for Wells in the Aril 18, 2012 hearing, as well as the late fees charged in May, June, and July of 2009, indicates that Wells was applying post-petition payments to pre-petition debt in violation of the automatic stay.

21.

Pursuant to 11 U.S.C. § 362(k), Plaintiff prays for actual damages, costs and attorneys' fees, and punitive damages.

22.

Plaintiff's actual damages include (but are not limited to) being foreclosed on and almost being evicted as a result of Wells' willful violation of the automatic stay.

WHEREFORE, Plaintiff prays for relief as follows:

(a) That this Court sanction Wells and McCalla under Fed. R. Bankr. Proc. 9011(c)(1)(B) and pursuant to the Court's "inherent authority";

(b) That this Court sanction Wells pursuant to 11 U.S.C. § 362(k) and award Plaintiff actual and punitive damages in an amount to be determined by this Court;

(c) That this Court sanction Wells pursuant to 11 U.S.C. § 362(k) and award Plaintiff

costs and attorney fees in an amount to be determined by this Court;

(d) That this Court grant Plaintiff further leave to amend his Complaint provided this

Court chooses to rule on Counts I and V of Plaintiff's Amended Complaint (Doc [5]);

and

(e) For such other and further relief as this Court deems just and proper.

Respectfully submitted this <u>30th</u> day of November, 2012.

THOMPSON LAW GROUP, LLC
Robert Thompson, Jr., Esq.
Georgia Bar No. 709750
H. Kirk Henson, Esq.
Georgia Bar No. 197411
William J. Smith
Georgia Bar No. 710280
Attorneys for Sammy L. Richards

Mailing Address:
THOMPSON LAW GROUP, LLC
P.O. Box 53484
Atlanta, Georgia 30355
Telephone: (404) 816-0500
Facsimile: (404) 816-6856
rthompson@thomlaw.net
khenson@thomlaw.net
wsmith@thomlaw.net

Street Address:
THOMPSON LAW GROUP, LLC
Ivy Place
3423 Piedmont Road, Suite 530
Atlanta, Georgia 30305

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 09-69716-WLH |
| | ) | |
| SAMMY L. RICHARDS, | ) | CHAPTER 13 |
| | ) | |
|    Debtor. | ) | JUDGE WENDY L. HAGENAU |
| ————————————————— | ) | |
| | ) | |
| SAMMY L. RICHARDS, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV. PROC. NO. 12-5345 |
| | ) | |
| WELLS FARGO NATIONAL BANK, | ) | |
| a/k/a Wells Fargo Bank, N.A., and | ) | |
| McCULLA RAYMOR, PC, | ) | |
| | ) | |
|    Defendants. | ) | |
| ————————————————— | ) | |

## CERTIFICATE OF SERVICE

  I hereby certify that I have this 26th day of November, 2012, served Defendants in this matter with the foregoing **PLAINTIFF'S SECOND AMENDED COMPLAINT** by U.S. Mail to the following addresses:

**Ashley S. Thompson**
Baker Donelson Bearman
Caldwell & Berkowitz, P.C.
Monarch Plaza, Suite 1600
3414 Peachtree Road, NE
Atlanta, GA 30326

**Kimberly D. Rayborn**
McCalla Raymer LLC
Suite 3200
Six Concourse Parkway
Atlanta, GA 30328

Respectfully submitted this 30th day of November, 2012.

THOMPSON LAW GROUP, LLC
Robert Thompson, Jr., Esq.
Georgia Bar No. 709750
H. Kirk Henson, Esq.
Georgia Bar No. 197411
William J. Smith
Georgia Bar No. 710280
Attorneys for Sammy L. Richards

Mailing Address:
THOMPSON LAW GROUP, LLC
P.O. Box 53484
Atlanta, Georgia 30355
Telephone: (404) 816-0500
Facsimile: (404) 816-6856
rthompson@thomlaw.net
khenson@thomlaw.net
wsmith@thomlaw.net

Street Address:
THOMPSON LAW GROUP, LLC
Ivy Place
3423 Piedmont Road, Suite 530
Atlanta, Georgia 30305

# Exhibit "A"

*(handwritten note: "16 payments")*

**WELLS FARGO HOME MORTGAGE**

## Customer Account Activity Statement
### 708-0134312081
### Sammy Richards

| Date Received | Contractual Due Date | Post Due Date | Pre Due Date | Dealer Funds Received | Trustee Funds Received | Trustee Interest | Amount Applied to Principal | Amount Applied to Interest | Escrow Applied Disbursed | Fees Assessed or Recovered | Principal Balance | Escrow Balance | Proof of Claim Balance | Outstanding Fee Balance | Corporate Advance Fees Assessed or Recovered | Outstanding Corporate Advance Balance | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/04/09 | | | | | | | | | -$44.03 | | $113,330.38 | $970.95 | $0.00 | $0.00 | | $0.00 | Mortgage Insurance Paid |
| 02/17/09 | | | | | | | | | | $38.02 | $113,330.38 | $570.95 | $0.00 | $38.02 | | $0.00 | Late Charge Assessed |
| 02/27/09 | 02/01/09 | | | $888.92 | | | $117.09 | $890.26 | $243.26 | $38.02 | $113,213.29 | $823.20 | $0.00 | $0.00 | | $0.00 | Payment and Late Charges Paid |
| 02/27/09 | | | | $0.37 | | | $0.37 | | | | $113,212.92 | $823.20 | $0.00 | $0.00 | | $0.00 | Principal Curtailment |
| 03/04/09 | | | | | | | | | -$44.03 | | $113,212.92 | $778.17 | $0.00 | $0.00 | | $0.00 | Mortgage Insurance Paid |
| 03/16/09 | | | | | | | | | | -$38.02 | $113,212.92 | $779.17 | $0.00 | $38.02 | | $0.00 | Mortgage Insurance Paid |
| 04/03/09 | | | | | | | | | -$44.05 | | $113,212.92 | $735.14 | $0.00 | $38.02 | | $0.00 | Mortgage Insurance Paid |
| 04/14/09 | | | | | | | | | | | $113,212.92 | $735.14 | $2,626.98 | $0.00 | | $0.00 | CHAPTER 13 BANK CASE # 06-08716 FILED ** |
| 04/16/09 | | | | | | | | | | -$38.02 | $113,212.92 | $735.14 | $2,626.98 | $38.02 | | $0.00 | Late Charge Assessed |
| 05/04/09 | | | | | | | | | -$44.03 | | $113,212.92 | $691.11 | $2,626.98 | $76.04 | | $0.00 | Mortgage Insurance Paid |
| 05/05/09 | | | | | | | | | -$78.04 | $76.04 | $113,212.92 | $915.07 | $2,626.98 | $0.00 | | $0.00 | Late Charge Paid |
| 05/12/09 | 03/01/09 | 05/01/09 | | | $950.02 | | $117.70 | $589.85 | $243.26 | | $113,095.22 | $969.32 | $2,626.98 | $0.00 | | $0.00 | Payment Applied, Remaining Funds Unapplied |
| 05/13/09 | | | | | | | | | $0.02 | | $113,095.22 | $459.34 | $2,626.98 | $38.02 | | $0.00 | Unapplied Funds to Escrow |
| 05/18/09 | | | | | | | | | | | $113,095.22 | $868.34 | $2,626.98 | $38.02 | | $0.00 | Late Charge Assessed |
| 06/01/09 | 04/01/09 | 06/01/09 | | | $950.02 | | $118.31 | $589.04 | $243.26 | | $112,976.91 | $1,101.69 | $2,626.98 | $38.02 | | $0.00 | Payment Applied, Remaining Funds Unapplied |
| 06/02/09 | | | | | | | | | $0.02 | | $112,976.91 | $1,101.59 | $2,626.98 | $38.00 | | $0.00 | Late Charge Paid |
| 06/04/09 | | | | | | | | | -$44.03 | | $112,976.91 | $1,057.56 | $2,626.98 | $38.00 | | $0.00 | Mortgage Insurance Paid |
| 06/16/09 | | | | | | | | | | -$38.02 | $112,976.91 | $1,057.56 | $2,626.98 | $76.02 | | $0.00 | Late Charge Assessed |
| 07/01/09 | 05/01/09 | 07/01/09 | | | $950.60 | | $118.93 | $588.42 | $243.26 | | $112,857.90 | $1,500.81 | $2,626.98 | $76.02 | | $0.00 | Monthly Mortgage Payment |
| 07/03/09 | | | | | | | | | -$44.03 | | $112,857.90 | $1,256.76 | $2,626.98 | $76.02 | | $0.00 | Mortgage Insurance Paid |

**Customer Account Activity Statement**
**708-0134312081**
**Sammy Richards**

WELLS FARGO HOME MORTGAGE

Page 4 of 7

| Date Received | Contracted Due Date | Post Due Date | Pm Due Date | Debtor Funds Received | Trustee Funds Received | Trustee Interest | Amount Applied to Principal | Amount Applied to Interest | Escrow Applied Disbursed | Fees Assessed or Recovered | Principal Balance | Escrow Balance | Proof of Claim Balance | Outstanding Fee Balance | Corporate Advance Fees Assessed or Recovered* | Outstanding Corporate Advance Balance* | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/19/09 | | | | | | | | | | -$27.90 | $112,857.98 | $1,256.78 | $2,626.66 | $113.98 | | $0.00 | Late Charge Assessed |
| 07/17/09 | | | | $950.62 | | | | | | | $112,857.98 | $1,256.78 | $2,626.69 | $113.98 | | $0.00 | Unapplied Funds |
| 07/21/09 | 06/01/09 | 08/01/09 | | | | | $119.65 | $697.60 | $263.26 | | $112,738.43 | $1,500.03 | $2,626.69 | $113.98 | | $0.00 | Unapplied Funds to Payment |
| 08/04/09 | | | | | | | | | -$44.03 | | $112,738.43 | $1,456.00 | $2,626.68 | $113.98 | | $0.00 | Mortgage Insurance Paid |
| 08/05/09 | | | | | | | | | | | $112,738.43 | $1,456.00 | $2,626.68 | $113.98 | | $300.00 | Bankruptcy Fees |
| 08/28/09 | | | | $950.62 | | | | | | | $112,738.43 | $1,456.00 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |
| 08/21/09 | 07/01/09 | 09/01/09 | | | | | $120.17 | $697.18 | $241.59 | | $112,618.26 | $1,697.59 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds to Payment |
| 09/04/09 | | | | | | | | | -$44.03 | | $112,618.26 | $1,663.56 | $2,626.69 | $113.98 | | $300.00 | Mortgage Insurance Paid |
| 09/03/09 | | | | | | | | | | | $112,618.26 | $1,663.56 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |
| 10/01/09 | 08/01/09 | 10/01/09 | | | | | $120.90 | $698.56 | $241.59 | | $112,497.46 | $1,895.15 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds to Payment |
| 10/02/09 | | | | | | | | | -$44.03 | | $112,497.46 | $1,851.12 | $2,626.68 | $119.98 | | $300.00 | Mortgage Insurance Paid |
| 10/21/09 | | | | | | | | | -$2,026.51 | | $112,497.46 | -$175.39 | $2,626.68 | $113.98 | | $300.00 | County Taxes Paid |
| 11/04/09 | | | | | | | | | -$44.03 | | $112,497.46 | -$219.42 | $2,626.68 | $113.98 | | $300.00 | Mortgage Insurance Paid |
| 11/30/09 | | | | $950.62 | | | | | | | $112,497.46 | -$219.42 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |
| 11/30/09 | 09/01/09 | 11/01/09 | | | | | $121.43 | $585.82 | $241.59 | | $112,376.03 | $22.17 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds to Payment |
| 12/04/09 | | | | | | | | | -$44.03 | | $112,376.03 | -$21.86 | $2,626.68 | $113.98 | | $300.00 | Mortgage Insurance Paid |
| 12/16/09 | | | | $950.00 | | | | | | | $112,376.03 | -$21.86 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |
| 12/16/09 | | | | | | | | | -$514.06 | | $112,376.03 | -$535.92 | $2,626.68 | $113.98 | | $300.00 | Homeowners Insurance Paid |
| 12/21/09 | 10/01/09 | 12/01/09 | | | | | $122.08 | $595.30 | $241.59 | | $112,253.97 | -$294.33 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds to Payment |
| 01/05/10 | | | | | | | | | -$44.03 | | $112,253.97 | -$338.36 | $2,626.66 | $113.98 | | $300.00 | Mortgage Insurance Paid |

**WELLS FARGO HOME MORTGAGE**

## Customer Account Activity Statement
### 708-0134312031
### Sammy Richards

| Date Received | Contractual Due Date | Pre Due Date | Past Due Date | Trustee Funds Received | Debtor Funds Received | Trustee Interest | Amount Applied to Principal | Amount Applied to Interest | Escrow Applied Disbursed | Fees Assessed or Recovered | Principal Balance | Escrow Balance | Proof of Claim Balance | Outstanding Fee Balance | Corporate Advance Fees Assessed or Recovered | Outstanding Corporate Advance Balance* | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/15/10 | | | | | $850.62 | | | | | | $112,253.07 | -$335.30 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |
| 01/15/10 | 11/01/09 | 01/01/10 | | | | | $122.09 | $564.66 | $241.59 | | $112,131.28 | -$80.77 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds to Payment |
| 02/04/10 | | | | | | | | | -$43.24 | | $112,131.28 | -$140.01 | $2,626.68 | $113.98 | | $300.00 | Mortgage Insurance Paid |
| 02/22/10 | | | | | $590.00 | | | | | | $112,131.28 | -$140.01 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |
| 02/23/10 | 12/01/09 | 02/01/10 | | | | | $123.33 | $564.02 | $241.59 | | $112,007.95 | $101.58 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds to Payment |
| 03/04/10 | | | | | | | | | -$43.24 | | $112,007.95 | $58.34 | $2,626.68 | $113.98 | | $300.00 | Mortgage Insurance Paid |
| 03/05/10 | | | | | $850.62 | | | | | | $112,007.95 | $58.34 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |
| 03/12/10 | 01/01/10 | 03/01/10 | | | | | $123.98 | $563.37 | $241.59 | | $111,883.97 | $299.93 | $2,626.68 | $113.98 | | $300.00 | Monthly Mortgage Payment |
| 04/02/10 | | | | | | | | | -$43.24 | | $111,883.97 | $256.69 | $2,626.68 | $113.98 | | $300.00 | Mortgage Insurance Paid |
| 04/09/10 | | | | | $850.62 | | | | | | $111,883.97 | $256.69 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |
| 04/12/10 | 02/01/10 | 04/01/10 | | | | | $124.62 | $562.73 | $241.59 | | $111,759.35 | $498.28 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds to Payment |
| 05/04/10 | | | | | | | | | -$43.24 | | $111,759.35 | $455.04 | $2,626.68 | $113.98 | | $300.00 | Mortgage Insurance Paid |
| 06/04/10 | | | | | | | | | -$43.24 | | $111,759.35 | $411.80 | $2,626.68 | $113.98 | | $300.00 | Mortgage Insurance Paid |
| 06/14/10 | | | | | $970.00 | | | | | | $111,759.35 | $411.80 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |
| 06/15/10 | 03/01/10 | 05/01/10 | | | | | $125.27 | $562.08 | $241.59 | | $111,634.08 | $653.39 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds to Payment |
| 07/02/10 | | | | | | | | | -$43.24 | | $111,634.08 | $610.15 | $2,626.68 | $113.98 | | $300.00 | Mortgage Insurance Paid |
| 07/16/10 | | | | | $948.99 | | | | | | $111,634.08 | $610.15 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |
| 07/16/10 | 04/01/10 | 08/01/10 | | | | | $125.92 | $561.43 | $241.59 | | $111,508.16 | $851.74 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds to Payment |
| 08/04/10 | | | | | | | | | -$43.24 | | $111,508.16 | $808.50 | $2,626.68 | $113.98 | | $300.00 | Mortgage Insurance Paid |
| 08/16/10 | | | | | $848.94 | | | | | | $111,508.16 | $808.50 | $2,626.68 | $113.98 | | $300.00 | Unapplied Funds |

**WELLS FARGO HOME MORTGAGE**

## Customer Account Activity Statement
708-0134312081
Sammy Richards

| Date Received | Contractual Due Date | Past Due Date | Pre Due Date | Debtor Funds Received | Trustee Funds Received | Trustee Interest | Amount Applied to Principal | Amount Applied to Interest | Fees Assessed or Recovered | Escrow Applied Disbursed | Principal Balance | Escrow Balance | Prncpl of Debit Balance | Outstanding Fee Balance | Corporate Advance Fees Assessed or Recovered * | Outstanding Corporate Advance Balance * | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/19/10 | 05/01/10 | 07/01/10 | | | | | $126.56 | $680.77 | | $241.50 | $111,381.58 | $1,050.00 | $2,626.85 | $113.98 | | $500.00 | Unapplied Funds to Payment |
| 08/30/10 | | | | | | | | | | -$43.24 | $111,381.58 | $1,006.85 | $2,626.85 | $113.98 | | $500.00 | Mortgage Insurance Paid |
| 10/01/10 | | | | | | | | | | | $111,381.58 | $1,006.85 | $2,626.85 | $113.98 | | $500.00 | Unapplied Funds |
| 10/04/10 | 08/01/10 | | 09/01/10 | $962.31 | | | $127.24 | $680.11 | | $241.69 | $111,254.34 | $1,248.44 | $2,626.85 | $113.98 | | $500.00 | Unapplied Funds to Payment |
| 10/04/10 | | | | | | | | | | | $111,254.34 | $1,206.20 | $2,626.85 | $113.96 | | $500.00 | Mortgage Insurance Paid |
| 10/11/10 | (09/01/10) | | | | | | -$127.24 | -$560.11 | | -$241.69 | $111,381.58 | $963.61 | $2,626.85 | $113.98 | | $500.00 | Misapplication Reversal to Suspense |
| 10/11/10 | | | | | | | | | | | $111,381.58 | $963.61 | $2,626.85 | $113.98 | | $500.00 | Misapplication Reversal |
| 10/22/10 | | | | | | | | | | -$1,828.19 | $111,381.58 | -$882.58 | $2,626.85 | $113.98 | | $500.00 | County Taxes Paid |
| 11/04/10 | | | | | | | | | | -$43.24 | $111,381.58 | -$905.82 | $2,626.85 | $113.98 | | $500.00 | Mortgage Insurance Paid |
| 11/05/10 | | | | | | | | | | | $111,381.58 | -$905.82 | $2,626.85 | $113.98 | -$150.00 | $400.00 | Bankruptcy Cost |
| 11/01/10 | | | | | | | | | | | $111,381.58 | -$905.82 | $2,626.85 | $113.98 | -$650.00 | $1,100.00 | Bankruptcy Fees |
| 11/09/10 | | | | | | | | | | | $111,381.58 | -$905.82 | $0.00 | $113.98 | | $1,100.00 | MOTION FOR RELIEF |
| 11/10/10 | | | | | | | | | $113.33 | | $111,381.58 | -$905.82 | $0.00 | $0.95 | | $1,100.00 | Unapplied Funds |
| 11/16/10 | | | | | | | | | -$28.46 | | $111,381.58 | -$905.82 | $0.00 | $29.14 | | $1,100.00 | Late Charge Assessed |
| 12/03/10 | | | | | | | | | | -$43.24 | $111,381.58 | -$949.06 | $0.00 | $29.14 | | $1,100.00 | Mortgage Insurance Paid |
| 12/20/10 | | | | | | | | | | -$587.37 | $111,381.58 | -$1,536.43 | $0.00 | $29.14 | | $1,100.00 | Homeowners Insurance Paid |
| 01/04/11 | | | | | | | | | | -$43.24 | $111,381.58 | -$1,579.67 | $0.00 | $29.14 | | $1,100.00 | Mortgage Insurance Paid |
| 01/18/11 | | | | | | | | | | | $111,381.58 | -$1,579.67 | $0.00 | $29.14 | -$467.50 | $1,567.50 | Attorney Fees |
| 01/18/11 | | | | | | | | | | | $111,381.58 | -$1,579.67 | $0.00 | $80.14 | -$250.00 | $1,817.50 | Process Service Fees |
| 01/18/11 | | | | | | | | | | | $111,381.58 | -$1,579.67 | $0.00 | $29.14 | -$18.44 | $1,835.94 | Certified Mail Costs |

# Exhibit "B"

ATTN MATThew Clark FAX # 877-601-785

OF

Robert J. Semrad * Associates

CASE # 09-69716-W.L.H

Here copys of check For mortsase payment
For Aus 2010 to wells Farso Home mortsase
dleard on 8-19-2010 By sun trust Bank
check # 1049   Sep payment send this
monday  9-27-2010 Risht AFter we met.
        thanks  Sammy L Richard ~~Bill

9-30-2010
404-625-7566

---

STORE YOUR DUPLICATE CHECKS IN YOUR CHECK BOX.

☑ Track your expenses...
☐ Clothing  ☐ Food  ☐ Transportation
☐ Credit Card  ☐ Utilities  ☐ Mortgage
☐ Entertainment  ☐ Insurance  ☐ Other:_____

1049

8-10-2010

BALANCE FORWARD
THIS ITEM  948.94
BALANCE/DEPOSIT
OTHER
BALANCE FORWARD

Wells Farso mortsase
Nine Hundred Fort Eight
Cleard 8-19-2010 on
Aus 2010 PAyment

NOT NEGOTIABLE

For added security, your name and account number do not appear on this copy.

---

STORE YOUR DUPLICATE CHECKS IN YOUR CHECK BOX.

☑ Track your expenses...
☐ Clothing  ☐ Food  ☐ Transportation
☐ Credit Card  ☐ Utilities  ☐ Mortgage
☐ Entertainment  ☐ Insurance  ☐ Other:_____

1051

9-15-2010

BALANCE FORWARD
THIS ITEM  962.31
BALANCE
DEPOSIT
OTHER
BALANCE FORWARD

Wells Farso Home mortsase
Nine Hundred sixty two 31/100

Sept 2010 PAyment

NOT NEGOTIABLE

For added security, your name and account number do not appear on this copy.

TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 09/30/2010 10:24
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : F9N242790
```

```
        DATE,TIME              09/30  10:23
        FAX NO./NAME           18776017851
        DURATION               00:00:29
        PAGE(S)                01
        RESULT                 OK
        MODE                   STANDARD
                               ECM
```

SUNTRUST BANK
P O BOX 622227
ORLANDO FL 32862-2227

Page 1 of 2
63/B05/0175/0 /11
█████████9976
09/13/2010

# SUNTRUST

## Account Statement

█████6004!
SAMMY RICHARDS
PO BOX 162366
ATLANTA GA 30321-2366

Questions? Please call
1-800-786-8787

ON 8/14, FEDERAL REGULATIONS CHANGED HOW WE PAY OVERDRAFTS ON ATM & DEBIT CARD
TRANSACTIONS.YOU MAY CHOOSE TO REQUEST THIS SERVICE OR WE WILL DECLINE THE ITEM
IF YOU EXCEED YOUR AVAILABLE BALANCE. TO ENSURE CONTINUATION OF YOUR OVER-
DRAFT SERVICE, VISIT SUNTRUST.COM/OVERDRAFT, CALL 800.485.7279, VISIT A BRANCH.

| Account Summary | Account Type | Account Number | Statement Period |
|---|---|---|---|
| | FREE CHECKING | █████9976 | 08/12/2010 - 09/13/2010 |

| Description | Amount | Description | Amount |
|---|---|---|---|
| Beginning Balance | $387.94 | Average Balance | $907.98 |
| Deposits/Credits | $3,338.02 | Average Collected Balance | $907.98 |
| Checks | $1,156.00 | Number of Days in Statement Period | 33 |
| Withdrawals/Debits | $2,163.62 | | |
| Ending Balance | $406.34 | | |

| Deposits/Credits | Date | Amount | Description | | |
|---|---|---|---|---|---|
| | 08/13 | 785.81 | ELECTRONIC/ACH CREDIT | | |
| | | | VOLUME TRANSPORT ACH | 2087 | |
| | 08/20 | 718.16 | ELECTRONIC/ACH CREDIT | | |
| | | | VOLUME TRANSPORT ACH | 2087 | |
| | 08/27 | 512.07 | ELECTRONIC/ACH CREDIT | | |
| | | | VOLUME TRANSPORT ACH | 2087 | |
| | 09/03 | 637.56 | ELECTRONIC/ACH CREDIT | | |
| | | | VOLUME TRANSPORT ACH | 2087 | |
| | 09/03 | 125.00 | DEPOSIT | | |
| | 09/10 | 559.42 | ELECTRONIC/ACH CREDIT | | |
| | | | VOLUME TRANSPORT ACH | 2087 | |

Deposits/Credits: 6          Total Items Deposited: 0

| Checks | Check Number | Amount | Date Paid | Check Number | Amount | Date Paid | Check Number | Amount | Date Paid |
|---|---|---|---|---|---|---|---|---|---|
| | 1050 | 1,156.00 | 09/08 | | | | | | |

Checks: 1

| Withdrawals/Debits | Date Paid | Amount | Description | | | |
|---|---|---|---|---|---|---|
| | 08/12 | 30.00 | CHECK CARD PURCHASE | | TR DATE 08/09 | |
| | | | SOUTHERN HEART SPECIALIST | 770-9912100 GA | | |
| | 08/16 | 100.55 | POINT OF SALE DEBIT | | TR DATE 08/14 | |
| | | | WAL-MART #1340 | LITHONIA GA | 24134001 | |
| | 08/17 | 9.05 | CHECK CARD PURCHASE | | TR DATE 08/14 | |
| | | | Flying J C store inside | Rock Hill SC | | |
| | 08/17 | 11.72 | CHECK CARD PURCHASE | | TR DATE 08/15 | |
| | | | NEW SHAN BUFFET | MONTEAGLE TN | | |
| | 08/19 | 948.94 | ELECTRONIC/ACH DEBIT | | | |
| | | | WFHM MORTGAGE | CHECKPAYMT 1049 | | |
| | 08/23 | 60.00 | ATM CASH WITHDRAWAL | | TR DATE 08/23 | |
| | | | SOUTHLAKE | MORROW GA | DA53GA021 | |
| | 08/23 | 30.00 | CHECK CARD PURCHASE | | TR DATE 08/20 | |
| | | | FAMS ITF THE EMORY CLINIC | 800-3996505 GA | | |

17402                              Member FDIC                    Continued on next page

# Exhibit "C"



+William    Search    Images    Maps    Play    YouTube    News    Gmail    Drive    Calendar    More ▾

sasc 2007-rf1                                                    ⚲William Smith    0    Share    👤

Web    Images    Maps    Shopping    More ▾    Search tools

About 38,100 results (0.32 seconds)

primary_doc.xml 🌐
www.sec.gov/Archives/edgar/data/912577/.../primary_doc.xm...
... Mortgage-Backed Security 116389.38 3826.13 144A SASC 2007-BHC1 A1 .....
Mortgage-Backed Security 160180.00 1713.87 144A SASC 2007-RF1 1AIO ...
You've visited this page 3 times. Last visit: 11/12/12

[PDF] Mortgage Update - 1Q 07 🌐
jenner.com/lehman/docs/.../LBEX-DOCID%20540069.pdf
File Format: PDF/Adobe Acrobat - Quick View
BNCMT 2007-1. Subprime. Sub Prime. -. 908. FFML 2006- ... SASC 2007-BC1.
Subprime. Sub Prime. -. 1,177 ... SASC 06-RF1. Prime FHA / VA. Prime. 73. 58 ...

[PDF] Mortgage Update - 2Q 07 🌐
jenner.com/lehman/docs/.../LBEX-DOCID%20505835.pdf
File Format: PDF/Adobe Acrobat
SASC 06-RF1. Prime FHA / VA. Prime. 58. -. SACC 2007-BC3. Subprime. Sub Prime.
-. 773. Breakout of Derivative Gross-up: Sub Prime. SASC 2007-GEL2 ...

Results for similar searches

[PDF] advertisement - Structured Finance Litigation Blog 🌐
www.structuredfinancelitigation.com/files/2012/.../CXA-Ad.pd...
File Format: PDF/Adobe Acrobat - View as HTML
ACE 2007-WM1. ACE 2007-WM2. BALTA 2006-4. BALTA 2006-8. BSABS 2004-HE7 ...
SASC 2007-BC3. SASC 2007-OSI. SAST 2004-1. SAST 2006-3 ...
More results for sasc 2007 rf1

SASC 2007 - The State of the Art of Stream Ciphers 🌐
sasc.crypto.rub.de/cfp.html
Nov 1, 2006 – In SASC 2007, the third in the series of SASC workshops, we will meet
again to consider how the state of stream ciphers might be changing, ...
More results for sasc 2007 rf1

SASC 2007 - The State of the Art of Stream Ciphers 🌐
sasc.crypto.rub.de/
Feb 23, 2007 – Welcome to the homepage of the SASC 2007 workshop! SASC 2007 will
provide a forum for the exchange of ideas about all aspects of stream ...
More results for sasc 2007 rf1

[PDF] Revised RF-1 2007 Front Page - Balmori Software Inc. 🌐
www.balmorisoftware.com/downloadables/rf1.pdf
File Format: PDF/Adobe Acrobat - Quick View
For adjustment on remittance report of previous quarter, use a separate RF-1 form and
check the box corresponding to "Addition to Previous RF-1" or "Deduction ...
More results for rf 1 2007

1  2  3  4  5  6  7  8  9  10    **Next**

Advanced search    Search Help    Give us feedback

Google Home    Advertising Programs    Business Solutions    Privacy & Terms
About Google

+William  Search  Images  Maps  Play  YouTube  News  Gmail  Drive  Calendar  More ▾

144A SASC 2007-RF1 1AIO                          🔍William Smith  0        Share        👤

Web    Images    Maps    Shopping    More ▾    Search tools                    [  ] [  ]    [        ]

8 results (0.20 seconds)

**primary_doc.xml** 🌐
www.sec.gov/Archives/edgar/data/912577/.../primary_doc.xm...
... 2034-05-25 3.1433 Other Instrument CMOs 4078.24 1602.59 SASC 2005-5 ......
Mortgage-Backed Security 160180.00 1713.87 **144A SASC 2007-RF1 1AIO** ...
You've visited this page 3 times. Last visit: 11/12/12

**N-MFP LIVE N 2012-08-31 0000856517 S000009574 4 N N N N 33 ...** 🌐
www.sec.gov/Archives/edgar/data/856517/.../primary_doc.xm...
... 2036-08-25 7.4845 Other Instrument CMOs 6211334.16 1457486.46 SASC ......
Security 16018000.00 172587.80 **144A SASC 2007-RF1 1AIO** 2037-03-25 ...
You visited this page on 11/12/12.

**<SEC-DOCUMENT>0001181431-12-043944.txt : 20121001 <SEC ...** 🌐
www.sec.gov/Archives/edgar/.../0001181431-12-043944.txt
Oct 18, 2012 – ... <part2:RepurchaseAgreement><part2:InvestmentIssuer>**144A SASC**
**2007-BHC1** ...... **SASC 2007-RF1 1AIO**</part2:InvestmentIssuer><part2: ...
You visited this page on 11/12/12.

→ **SEC FORM N-MFP** 🌐
www.sec.gov/Archives/edgar/data/...MFP.../primary_doc.xml
For repurchase agreements, describe the securities subject to the repurchase
agreement, including: a. The name of the issuer: **144A SASC 2007**-BHC1 A1. b.
You've visited this page 2 times. Last visit: 11/12/12

**<SUBMISSION> <ACCESSION-NUMBER>0001181431-12-043963 ...** 🌐
yahoo.brand.edgar-online.com/EFX_dll/EDGARpro.dll?...
... 2007</part2:InvestmentIssuer><part2:InvestmentMaturityDate><invest:date>2037-07-
25 ...... ><part2:RepurchaseAgreement><part2:InvestmentIssuer>**144A SASC 2007-RF1**
**1AIO**</part2:InvestmentIssuer><part2:InvestmentMaturityDate><  ...

**<SUBMISSION> <ACCESSION-NUMBER>0001181431-12-043906 ...** 🌐
google.brand.edgar-online.com/EFX../EDGARpro.dll?...
... ><part2:RepurchaseAgreement><part2:InvestmentIssuer>**144A** PTRA 2007-1A ...... >
<part2:RepurchaseAgreement><part2:InvestmentIssuer>**SASC** 2006-S1 ..... **2007-RF1**
**1AIO**</part2:InvestmentIssuer><part2:InvestmentMaturityDate><  ...

**Form: N-MFP, Received: 10/01/2012 07:11:29 - EDGAR Online** 🌐
google.brand.edgar-online.com/EFX../EDGARpro.dll?...
Oct 1, 2012 – **144A SASC 2007-RF1 1AIO**. 2037-03-25. 4.81653. Other Instrument -
CMO. $341,903.81. $59,740.45. BEAR STEARNS SERIES 2007 ...

**Form: N-MFP, Received: 08/07/2012** 🌐
google.brand.edgar-online.com/EFX../EDGARpro.dll?...
Aug 7, 2012 – **144A SASC 2007-RF1 1AIO**. 2037-03-25. 4.81653. Other Instrument -
CMO. $427,379.76. $74,675.57. BEAR STEARNS SERIES 2007 ...

Advanced search    Search Help    Give us feedback

Google Home    Advertising Programs    Business Solutions    Privacy & Terms
About Google

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

## N-MFP

OMB APPROVAL

OMB Number:  3235-0657

Expires:  May 31, 2013

Estimated average burden hours per response:  10,9

## MONTHLY SCHEDULE OF PORTFOLIO HOLDINGS

## OF MONEY MARKET FUNDS

---

### 1. Identity Information

| Report for 2012-07-31 | CIK Number of Registrant 0000912577 ← | EDGAR Series Identifier S000009743 |
|---|---|---|

Total number of share classes in the series
1

Do you anticipate that this will be the fund's final filing on Form N-MFP?

☐ Yes ☒ No

Is the fund liquidating?

☐ Yes ☒ No

Is the fund merging with, or being acquired by, another fund?

☐ Yes ☒ No

| Successor fund CIK | Successor fund Securities Act File Number | Successor fund EDGAR Series Identifier |
|---|---|---|

If this is not a final filing: has the fund acquired or merged with another fund since the last filing?

☐ Yes ☒ No

| Acquired or merged fund CIK | Acquired or merged fund Securities Act File Number | Acquired or merged fund EDGAR Series Identifier |
|---|---|---|

---

## Part I - Information about the Fund

### A. Series-Level Information

| Item 1. Securities Act File Number 33-69268 | Item 2. Investment Adviser | Item 3. Sub-Adviser. If a fund has one or more sub-advisers, disclose the name of each sub-adviser |
|---|---|---|
| | Adviser: FEDERATED INVESTMENT MGMT CO — SEC File Number: 801-34612 | Sub Advisor  SEC File Number |

| Item 4. Independent Public Accountant | Item 5. Administrator. If a fund has one or more administrators, disclose the name of each administrator | Item 6. Transfer Agent |
|---|---|---|
| Name: KPMG  City: BOSTON  State: MA | Name: FEDERATED ADMINISTRATIVE | Name  CIK Number  SEC File Number: STATE |

| | | STREET BANK AND TRUST CO | 0000839287 | 085-05003 |

| Item 7. Master-Feeder Funds. Is this a feeder fund? | Item 8. Master-Feeder Funds. Is this a master fund? | Item 9. Is this series primarily used to fund insurance company separate accounts? |
|---|---|---|
| ☐ Yes ☒ No<br><br>a. Identify the master fund by CIK<br><br>b. Securities Act file number of the master fund<br><br>c. EDGAR series identifier of the master fund | ☐ Yes ☒ No<br><br>a. If this is a master fund, identify all feeder funds by CIK or, if the fund does not have a CIK, by name<br><br>b. Securities Act file number of each feeder fund<br><br>c. EDGAR series identifier of each feeder fund | ☐ Yes ☒ No |

| Item 10. Category. Indicate the category that most closely identifies the money market fund<br>    Prime | Item 11. Dollar weighted average portfolio maturity<br>    51 days | Item 12. Dollar weighted average life maturity. Calculate the dollar weighted average portfolio maturity without reference to the exceptions in rule 2a-7(d) regarding interest rate readjustments<br>    70 days |
|---|---|---|

| Item 13. Total value of portfolio securities at amortized cost, to the nearest cent<br>    $177,772,518.21 | Item 14. Total value of other assets, to the nearest cent<br>    $95,816.21 | Item 15. Total value of liabilities, to the nearest cent<br>    $28,959.55 |
|---|---|---|

| Item 16. Net assets of the series, to the nearest cent<br>    $177,839,374.87 | Item 17. 7-day gross yield<br>    0.42% |
|---|---|

Item 18. Shadow Price of the Series

    a. The net asset value per share most recently calculated using available market quotations (or an appropriate substitute that reflects current market conditions), including the value of any capital support agreement, to the nearest hundredth of a cent.

    $1.0001

    b. Date as of which the market-based net asset value disclosed in item 18a was calculated.

    2012-07-31

    c. The net asset value per share most recently calculated using available market quotations (or an appropriate substitute that reflects current market conditions), excluding the value of any capital support agreement, to the nearest hundredth of a cent.

    $1.0001

    d. Date as of which the market-based net asset value disclosed in item 18c was calculated.

    2012-07-31

**B. Class-Level Information.**
**For each Class of the Series, disclose the following:**

| Item 19. EDGAR Class Identifier<br>    C000026768 | Item 20. Minimum Initial Investment<br>    $1.00 | Item 21. Net assets of the Class, to the nearest cent |
|---|---|---|

SEC FORM N-MFP

$177,839,374.87

| Item 22. Net asset value per share for purposes of distributions, redemptions, and repurchase, to the nearest cent<br>$1.00 | Item 23. Net shareholder flow activity for the month ended (subscriptions less redemptions), to the nearest cent<br>$-1,192,580.07<br>a. Gross subscriptions for the month ended (Including dividend reinvestments), to the nearest cent<br>$8,628,444.88<br>b. Gross redemptions for the month ended, to the nearest cent<br>$9,821,024.95 | Item 24. 7-day net yield, as calculated under Item 26(a)(1) of Form N-1A<br>0% |
|---|---|---|

**Item 25. Shadow Price of Each Class**

a. The net asset value per share most recently calculated using available market quotations (or an appropriate substitute that reflects current market conditions), including the value of any capital support agreement, to the nearest hundredth of a cent.

$1.0001

b. Date as of which the market-based net asset value disclosed in item 25a was calculated.

2012-07-31

c. The net asset value per share most recently calculated using available market quotations (or an appropriate substitute that reflects current market conditions), excluding the value of any capital support agreement, to the nearest hundredth of a cent.

$1.0001

d. Date as of which the market-based net asset value disclosed in item 25c was calculated.

2012-07-31

## Part II - Schedule of Portfolio Securities

**For each security held by the money market fund, disclose the following:**

| Item 26. Name of the Issuer<br>VW Credit, Inc. | Item 27. The title of the issue (including coupon or yield)<br>VW Credit, Inc., 0.400%, 8/23/2012 | Item 28. The CUSIP. If the security has a CUSIP, filers must provide the security's CUSIP pursuant to this Item and may skip Items 29 and 30<br>91842LHP2 |
|---|---|---|
| Item 29. Other unique identifier, if the security has a unique identifier. If a CUSIP is provided pursuant to Item 28, skip this Item | Item 30. CIK of the issuer, if the issuer has a CIK. If a CUSIP is provided pursuant to Item 28, skip this Item | Item 31. The category of investment. Indicate the category that most closely identitfies the instrument<br>    Financial Company Commercial Paper<br>If Other Instrument, include a brief description |

Item 32. If the security is a repurchase agreement: is the fund treating the acquisition of the repurchase agreement as the acquisition of the underlying securities (i.e., collateral) for purposes of portfolio diversification under rule 2a-7?

☐ Yes ☒ No

For repurchase agreements, describe the securities subject to the repurchase agreement, including:

a. The name of the issuer:

b. Maturity date:

| Item 26. Name of the Issuer<br>J.P. Morgan Securities LLC | Item 27. The title of the issue (including coupon or yield)<br>J.P. Morgan Securities LLC, 0.500%, 8/1/2012 | Item 28. The CUSIP. If the security has a CUSIP, filers must provide the security's CUSIP pursuant to this Item and may skip Items 29 and 30<br>616994000 |
| --- | --- | --- |
| Item 29. Other unique identifier, if the security has a unique identifier. If a CUSIP is provided pursuant to Item 28, skip this Item | Item 30. CIK of the issuer, if the issuer has a CIK. If a CUSIP is provided pursuant to Item 28, skip this Item | Item 31. The category of investment. Indicate the category that most closely identitfies the instrument<br>Other Repurchase Agreement ←<br>If Other Instrument, include a brief description |

Item 32. If the security is a repurchase agreement: is the fund treating the acquisition of the repurchase agreement as the acquisition of the underlying securities (i.e., collateral) for purposes of portfolio diversification under rule 2a-7?

☐ Yes ☒ No

→ For repurchase agreements, describe the securities subject to the repurchase agreement, including:

a. The name of the issuer: AHM

b. Maturity date: 2047-03-25

    from:

    to:

c. Coupon or yield: 2.0784

d. The category of investments: Other Instrument

    If Other Instrument, include a brief description: CMO

e. The principal amount, to the nearest cent: $1,897,827.52

f. Value of collateral, to the nearest cent: $217,636.30

If multiple securities of an issuer are subject to the repurchase agreement, the securities may be aggregated, in which case disclose:

(a) the total principal amount and value and (b) the range of maturity dates and interest rates.


For repurchase agreements, describe the securities subject to the repurchase agreement, including:

a. The name of the issuer: CWALT

b. Maturity date: 2046-08-25

    from:

    to:

c. Coupon or yield: 0.4362

d. The category of investments: Other Instrument

    If Other Instrument, include a brief description: Asset Backed Securities

e. The principal amount, to the nearest cent: $563,106.17

f. Value of collateral, to the nearest cent: $317,861.39

If multiple securities of an issuer are subject to the repurchase agreement, the securities may be aggregated, in which case disclose:

(a) the total principal amount and value and (b) the range of maturity dates and interest rates.

a. The name of the issuer: 144A JPMRR 2005-712A1

b. Maturity date: 2037-01-27

    from:

    to:

c. Coupon or yield: 6.25

d. The category of investments: Other Instrument

    If Other Instrument, include a brief description: CMO

e. The principal amount, to the nearest cent: $23,802.60

f. Value of collateral, to the nearest cent: $24,420.49

If multiple securities of an issuer are subject to the repurchase agreement, the securities may be aggregated, in which case disclose:

(a) the total principal amount and value and (b) the range of maturity dates and interest rates.


For repurchase agreements, describe the securities subject to the repurchase agreement, including:

a. The name of the issuer: 144A SASC 2003-14 B412

b. Maturity date: 2033-05-25

    from:

    to:

c. Coupon or yield: 5.7313

d. The category of investments: Other Instrument

    If Other Instrument, include a brief description: CMOs

e. The principal amount, to the nearest cent: $5,795.17

f. Value of collateral, to the nearest cent: $269.27

If multiple securities of an issuer are subject to the repurchase agreement, the securities may be aggregated, in which case disclose:

(a) the total principal amount and value and (b) the range of maturity dates and interest rates.


For repurchase agreements, describe the securities subject to the repurchase agreement, including:

a. The name of the issuer: 144A JPMCC 2007-LDPX HS

b. Maturity date: 2049-01-15

    from:

    to:

c. Coupon or yield: 5.7592

d. The category of investments: Other Instrument

    If Other Instrument, include a brief description: Commercial Mortgage-Backed Security

e. The principal amount, to the nearest cent: $160,180.00

f. Value of collateral, to the nearest cent: $1,713.87

If multiple securities of an issuer are subject to the repurchase agreement, the securities may be aggregated, in which case disclose:

(a) the total principal amount and value and (b) the range of maturity dates and interest rates.


For repurchase agreements, describe the securities subject to the repurchase agreement,

including:

a. The name of the issuer: 144A SASC 2007-RF1 1A1O   ←

b. Maturity date: 2037-03-25

    from:

    to:

c. Coupon or yield: 4.8165

d. The category of investments: Other Instrument

    If Other Instrument, include a brief description: CMO

e. The principal amount, to the nearest cent: $51,285.57

f. Value of collateral, to the nearest cent: $8,961.07

If multiple securities of an issuer are subject to the repurchase agreement, the securities may be aggregated, in which case disclose:

(a) the total principal amount and value and (b) the range of maturity dates and interest rates.


For repurchase agreements, describe the securities subject to the repurchase agreement, including:

a. The name of the issuer: BEAR STEARNS SERIES 2007

b. Maturity date: 2022-03-15

    from:

    to:

c. Coupon or yield: 1.1487

d. The category of investments: Other Instrument

    If Other Instrument, include a brief description: CMO

e. The principal amount, to the nearest cent: $124,079.65

f. Value of collateral, to the nearest cent: $111,720.90

If multiple securities of an issuer are subject to the repurchase agreement, the securities may be aggregated, in which case disclose:

(a) the total principal amount and value and (b) the range of maturity dates and interest rates.


For repurchase agreements, describe the securities subject to the repurchase agreement, including:

a. The name of the issuer: JPMORGAN MORTGAGE TRUST 2

b. Maturity date: 2037-12-26

    from:

    to:

c. Coupon or yield: 0.507

d. The category of investments: Other Instrument

    If Other Instrument, include a brief description: CMO

e. The principal amount, to the nearest cent: $460,272.69

f. Value of collateral, to the nearest cent: $991.76

If multiple securities of an issuer are subject to the repurchase agreement, the securities may be aggregated, in which case disclose:

(a) the total principal amount and value and (b) the range of maturity dates and interest rates.

Home | Latest Filings | Previous Page

## U.S. Securities and Exchange Commission

## EDGAR Search Results

Search the Next-Generation EDGAR System

SEC Home » Search the Next-Generation EDGAR System » Company Search » *Current Page*

### FEDERATED INSURANCE SERIES CIK#: 0000912577 (see all company filings)

State location: PA | State of Inc.: MA | Fiscal Year End: 1231
formerly: INSURANCE MANAGEMENT SERIES (filings through 1996-02-29)
(List all Funds and Classes/Contracts for FEDERATED INSURANCE SERIES)

| Business Address | Mailing Address |
|---|---|
| *4000 ERICSSON DRIVE WARRENDALE PA 15086-7561 8003417400* | *4000 ERICSSON DRIVE WARRENDALE PA 15086-7561* |

| Filter Results: | Filing Type: | Prior to: (YYYYMMDD) | Limit Results Per Page |
|---|---|---|---|
| | | | 40 Entries |

Search
Show All
Prospectuses
Proxy Voting Records

Items 1 - 40 RSS Feed

Next 40

| Filings | Format | Description | Filing Date | File/Film Number |
|---|---|---|---|---|
| 40-17G/A | Documents | **[Amend]**Fidelity Bond [Rule 17G-1(g)] Acc-no: 0001318148-12-001688 (40 Act) Size: 212 KB | 2012-10-16 | 811-08042 121145841 |
| N-MFP | Documents | Monthly Schedule Of Portfolio Holdings Of Money Market Funds Acc-no: 0001181431-12-049319 (33 Act) Size: 377 KB | 2012-09-07 | 811-08042 121081009 |
| NSAR-A | Documents | Semi-annual report for management companies Acc-no: 0000912577-12-000004 (40 Act) Size: 58 KB | 2012-08-28 | 811-08042 121059399 |
| N-CSRS | Documents | Certified Shareholder Report, Semi-Annual Acc-no: 0001318148-12-001399 (40 Act) Size: 2 MB | 2012-08-23 | 811-08042 121051892 |
| N-PX | Documents | Annual Report of proxy voting record of management investment companies Acc-no: 0001144204-12-047752 (40 Act) Size: 2 MB | 2012-08-23 | 811-08042 121051747 |
| N-MFP | Documents | Monthly Schedule Of Portfolio Holdings Of Money Market Funds Acc-no: 0001181431-12-043944 (33 Act) Size: 436 KB | 2012-08-07 | 811-08042 121012139 |
| N-MFP | Documents | Monthly Schedule Of Portfolio Holdings Of Money Market Funds Acc-no: 0001181431-12-040136 (33 Act) Size: | 2012-07-09 | 811-08042 12952721 |



U.S. Securities and Exchange Commission

# Filing Detail

SEC Home » Search the Next-Generation EDGAR System » Company Search » *Current Page*

---

**Form N-MFP** - *Monthly Schedule Of Portfolio Holdings Of Money Market Funds*    SEC Accession No. 0001181431-12-043944

| **Filing Date** | **Period of Report** |
|---|---|
| 2012-08-07 | 2012-07-31 |
| **Accepted** | **Filing Date Changed** |
| 2012-08-07 12:12:58 | 2012-08-07 |
| **Documents** | |
| 1 | |

---

Document Format Files

| Seq | Description | Document | Type | Size |
|---|---|---|---|---|
| 1 | N-MFP | primary_doc.html | N-MFP | |
| 1 | N-MFP | primary_doc.xml | N-MFP | 435122 |
| | Complete submission text file | 0001181431-12-043944.txt | | 436639 |

---

## Series and Classes/Contracts Information:

Existing

| | Status | Name | Ticker Symbol |
|---|---|---|---|
| **CIK 0000912577** | | | |
| **Series S000009743** | | Federated Prime Money Fund II | |
| *Class/Contract C000026768* | | Federated Prime Money Fund II | |

---

## FEDERATED INSURANCE SERIES (Filer) CIK: 0000912577 (see all company filings)

IRS No.: **256425525** | State of Incorp.: **MA** | Fiscal Year End: **1231**
Type: **N-MFP** | Act: **33** | File No.: **811-08042** | Film No.: **121012139**

Business Address
*4000 ERICSSON DRIVE*
*WARRENDALE PA 15086-7561*
8003417400

Mailing Address
*4000 ERICSSON DRIVE*
*WARRENDALE PA 15086-7561*

# Exhibit "D"

THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | : Case No. 09-69716-WLH |
| | : |
| SAMMY L. RICHARDS, | : |
| | : Chapter 13 |
| Debtor. | : |
| | : April 18, 2012 |
| | : |

: : : : : : : : : : : : : : : : : : : : : : : : : : : : :


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE **WENDY L. HAGENAU**
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

FOR THE DEBTOR
**Satyam A. Mehta, Esq.**
Mehta & Mehta, LLC
50 Glenlake Parkway, Suite 350
Atlanta, GA 30328

FOR THE CREDITOR, WELLS FARGO
**Ashley Thompson, Esq.**
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
Monarch Plaza
3414 Peachtree Road NE
Suite 1600
Atlanta, GA 30326

CHAPTER 13 TRUSTEE
**Nancy J. Whaley**
303 Peachtree Center Avenue, Suite 120
Atlanta, GA 30303

Transcript prepared by:        JARRETT TRANSCRIPTION SERVICES
                               1480 Oak Tree Lane SE
                               Cleveland, TN 37311


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1                    P R O C E E D I N G S

2              THE CLERK:  Line item number 14, Samuel -- Sammy

3    Richards, hearing on status of Debtor's case.

4              MR. MEHTA:  Good morning, Your Honor.  Your Honor,

5    my client, Sammy Richards, he comes today to request that

6    this Court vacate a relief from the automatic stay that was

7    granted to Defendant Wells Fargo back in October of 2010.  We

8    believe that Sammy has the right -- my client has a right to

9    request this relief under Bankruptcy Rule 9024, specifically

10   invoking Rule 60(b) under 60(b)(3), (b)(5) and (b)(6).  Now,

11   we understand that there may be some time limitation as it

12   relates to the one-year rule on (b)(1) through (b)(3), but

13   nevertheless, we feel that the Court may vacate this order as

14   a result of (b)(5) and (b)(6) if it's made within a

15   reasonable time.

16             Your Honor, we believe -- excuse me -- that this

17   Court has the authority to vacate an order under (b)(5) if it

18   prospectively is no longer equitable, meaning applying it is

19   no longer equitable.  While the standard in granting this

20   relief is not extremely clear, the Supreme Court has stated

21   that a party can request the Court to vacate an order if

22   there's a significant change in the factual circumstances or

23   the law, and in this case, Your Honor, my client -- there is

24   a significant factual change of circumstances because the

25   order was procured by the deceitful practices from the

                              2

1  Defendant.  Specifically, the Defendant had a duty to
2  disclose that they had received payments for a mortgage for a
3  month that they were claiming they did not.  Additionally, it
4  was not found until a few months later that the Defendant
5  didn't actually hold a valid security interest in the
6  property.  So all of this was used by the Defendant to
7  request relief from the automatic stay.

8          Now, although in the situation, my client's
9  attorney did not attend the hearing, my client did provide
10 the attorney with proof of payment and Defendant had
11 acknowledged, on its own statement that it received those
12 payments and also that the attorney did not attend -- did not
13 forward that payment to the Trustee or to the Defendant, even
14 though my client already had.  So by not attending the
15 hearing, the Court obviously had to grant the order that was
16 proposed by the Defendant, even though the premises upon
17 which they asked for the relief was deceitful and shouldn't
18 have been allowed because they had lost subject matter
19 jurisdiction to bring that even forward.

20         By granting them this relief, they effectively
21 allowed Defendant to proceed with foreclosure proceedings on
22 my client, basically strong-arming him into trying to accept
23 a loan modification or loan assistance that was clearly not
24 in the best interest of my Debtor.  Even though he was
25 qualified to receive a much lesser interest rate and less

3

1   payment, they actually made him pay more up front and just

2   take off about $15 a month going forward.  But basically,

3   what's going on here is that Defendant, by having this order,

4   is strong-arming my client into accepting unreasonable terms,

5   and in addition, they're just basically trying to foreclose

6   on him.  And they filed a foreclosure action in the Clayton

7   State Court, which my client has also asked that this --

8   asked that that Court relie -- stay the proceedings until we

9   have a determination on this issue.

10        Now, I understand that his motion that he sent in

11   the beginning of February asked for a lot of other relief

12   like injunctive relief and declaratory relief and sanctions,

13   and I understand that does require adversary proceeding, but

14   at minimum what Sammy, as pro se, has requested is to relief

15   -- vacate the relief from the order that was granted to

16   Defendant because of all these deceitful practices engaged by

17   the Defendant.  And under (b)(6), Your Honor, relief may also

18   be granted because as Georgia understands it, this should be

19   only used to grant relief where exceptional or extraordinary

20   circumstances exist.

21        In addition, my client must display that there's a

22   more compelling showing of inequity and hardship.  And I

23   understand that the Court has to balance the interest

24   regarding the finality of a judgment versus the importance of

25   the Movant's hardship and circumstances.  However, in this

1   case, because of this order, my client has had to, at times,

2   give up his job to fight pro se on certain issues, including

3   this -- these foreclosure proceedings.  He has had to

4   basically come in representing himself in court on another

5   issue regarding a Lemon Law claim that he had come to this

6   court to represent upon.  He was going through a divorce at

7   the time because most -- part of it, I would say, is because

8   his wife didn't believe that there was going to be a home for

9   him to live in as a result of these impending foreclosure

10  proceedings, and he had to deal with, in addition to that,

11  predatory real-estate speculators who were willing to buy the

12  property, but they found out that it was just a fraud

13  transaction.  And on top of that, he had to file his own

14  answers and motions.

15          Basically, what I'm saying, Your Honor, is that

16  while ineffective assistance of counsel, in itself, should

17  not reverse an order that was granted under (b)(6), the fact

18  that we have ineffective assistance of counsel, in terms of

19  not providing the documentation to the Defendants, in

20  addition to Defendant's deceitful practices, in addition to

21  him having to do all this pro se is -- altogether, this

22  constitutes exceptional and extraordinary circumstances, and

23  in which case, my client had to suffer an extreme hardship.

24  As such, we are requesting that this Court vacate its

25  original order and grant -- granting relief to the Defendant

5

1 | and that my client recover fees and costs associated with

2 | this motion.

3 |      THE COURT:  One question.  I -- as I recall, Mr.

4 | Richards's case is completed.  All the creditors have been

5 | paid in full.

6 |      MR. MEHTA:  Uh-huh.

7 |      THE COURT:  So if I granted your motion so that the

8 | stay is reimposed, what happens then?

9 |      MR. MEHTA:  Well, I was also --

10 |      THE COURT:  The bankruptcy case is over.  It's

11 | going to get closed.

12 |      MR. MEHTA:  I agree.  I believe what -- Your Honor,

13 | what we are trying to do is make sure that this case stays

14 | open so that we may also file an adversary complaint against

15 | Defendant for all the inequities that have occurred, and we

16 | actually have that adversary complaint ready to be filed at

17 | any point.  I just felt that we need to probably determine

18 | the issue on whether this Court can vacate the relief from

19 | automatic stay first before we go ahead and file the

20 | adversary proceeding.

21 |      THE COURT:  Okay.  All right.  Thank you.

22 |      Ms. Thompson.

23 |      MS. THOMPSON:  Good morning, Your Honor.  Wells

24 | Fargo does oppose the motion.  We object to reopening the

25 | order for many reasons.

6

1        First, there hasn't been any deceit by Wells Fargo.

2   There has also been no change in circumstances.  All the

3   information being cited in the motion was certainly available

4   to Mr. Richards on the date that the Court made its order

5   back in 2010.  Although Debtor did send funds to Wells Fargo

6   in August and September of 2010, Debtor was so far behind in

7   his payments that according to the loan terms, the funds sent

8   in August and September were applied to the balances due for

9   May 1st and June 1st of 2010.  So, in fact, Mr. Richards was

10  in default at that time.

11        In addition, there are some allegations of a forged

12  security deed, but that deed was recorded and does serve -- I

13  guess, to be clear, Mr. Richards is not alleging that he did

14  not sign the security deed.  He is simply alleging that the

15  witness that -- that he received a copy that was unsigned by

16  a witness.  However, the recorded deed was signed by the

17  attesting witness, and under OCGA Section 44-2-2, the

18  security deed is still valid as between the parties, and

19  because any defect that may exist, although Wells Fargo does

20  not admit there is such a defect, it still serves as notice

21  to bonafide purchasers and to the public.

22        In addition, Debtor has not shown that his

23  allegations of fraud, that any such conduct by Wells Fargo,

24  if it had occurred, prevented him from fully and fairly

25  presenting his defense to the motion in 2010, as required by

7

1 several cases.

2      In addition, he has alleged fraud upon the Court,
3 and none of the conduct alleged arises to the kind of
4 egregious misconduct, such as bribery of a judge, required
5 for fraud upon the Court. He has also alleged an unclean
6 hands defense, which should have been presented in defense of
7 the motion and is not available to serve as a statutory
8 grounds for reopening an order under Rule 60(b).

9      In addition, there are two -- perhaps three
10 procedural defects with this motion. The first is that it
11 has been filed after the one-year deadline provided by Rule
12 60(c), and I have cases available to present to Your Honor,
13 if you wish to see them, regarding that after this time, that
14 is the absolute end date.

15      In addition, he has brought some sanctions,
16 complaints and that portion of the order is completely
17 deficient procedurally, in terms of that it has not complied
18 with Rule 11(c)(2) in the sense it was not filed separately.
19 It needs to be an adversary complaint, and it was not served
20 on us before it was filed with the Court.

21      So for all of those reasons, Wells Fargo submits to
22 the Court that the order should not be reopened. And I guess
23 that's it.

24      THE COURT: Okay. Thank you.

25      Yes. Mr. Mehta?

8

1  |  MR. MEHTA: Your Honor, Defendant claims that my
2  | client was not actually current on his payments. Now, when
3  | my client filed for bankruptcy in 2009, at that point, there
4  | was an arrearage that got, I guess, put into the plan. That
5  | being said, the information that the Defendants had requested
6  | regarding the payments for those months had been provided to
7  | the Defendant prior to the hearing. They had knowledge of
8  | this information. They had knowledge that -- they had
9  | documentation of this, and it's even in their statement that
10 | they provided Mr. Richard, himself, regarding the payments
11 | and on the date they were made.

12 |  Second of all, the valid -- invalid security
13 | interest, there is state law against what Defendant is
14 | claiming regarding the invalid -- invalidity of the security
15 | deed. It was mentioned in Mr. Richards's motion at that
16 | time, Gordon v. Wells Fargo, I believe, where we have a
17 | similar situation of unforged security deed or altered
18 | security deed.

19 |  Those two facts alone, in itself, basically do not
20 | -- I mean, we don't feel they permit this Court to be able to
21 | -- don't feel that Defendant had subject matter jurisdiction
22 | to even request relief from the automatic stay.

23 |  THE COURT: But where I continue to get hung up is
24 | even if you're correct --

25 |  MR. MEHTA: Uh-huh.

9

1           THE COURT:   -- the plan is completed.

2           MR. MEHTA:   Okay.

3           THE COURT:   And the plan can't be modified now

4    because all the payments under the plan have been completed.

5           MR. MEHTA:   Okay.

6           THE COURT:   So what would be the point of setting

7    aside the relief from stay order because there's no mechanism

8    in the bankruptcy case, short of filing a new case --

9           MR. MEHTA:   Uh-huh.

10          THE COURT:   -- that would allow him to still repay

11   the debt because from everything I'm hearing, there's no

12   question but that he borrowed the money --

13          MR. MEHTA:   Uh-huh.

14          THE COURT:   -- and he bought the house.  So he

15   still owes the money.  I understand the question about

16   sanctions and fees, and that can still be done even -- that

17   can be done even if you don't reverse the order.  If you

18   believe that the -- if you want to sue the -- whoever, Wells

19   Fargo or whoever you think made the misrepresentations to the

20   Court for sanctions, you can file a Rule 11.  You can still

21   file an --

22          MR. MEHTA:   Uh-huh.

23          THE COURT:   -- adversary proceeding, but I'm just

24   trying to figure out what the point of setting aside the

25   order granting relief from the stay is, as opposed to having

                                10

1  you continue to litigate your issues about the validity of

2  the security deed before the state court, which is apparently

3  where it is right now.

4           MR. MEHTA:  Well, to my understanding, Your Honor,

5  by granting the order for relief from the automatic stay to

6  the Defendant, it basically gave Defendant the ability to

7  strong-arm my client into foreclosing.

8           THE COURT:  But what can I do now?  That's my

9  question.

10          MR. MEHTA:  Well -- okay.  I apologize.

11          THE COURT:  Okay.  Because this plan is over.

12          MR. MEHTA:  Uh-huh.

13          THE COURT:  He's paid all the creditors, so we

14 can't modify the plan to put in any sort of provisions to pay

15 Wells Fargo now.

16          MR. MEHTA:  Okay.

17          THE COURT:  So if I reimpose the stay, then they're

18 going to file a motion for relief from stay, and frankly,

19 even if they were an unsecured creditor, I would lift the

20 stay because there's nothing that I can do for them in

21 bankruptcy because he can't pay them through the plan

22 anymore.

23          MR. MEHTA:  I understand, Your Honor.

24          THE COURT:  So that's what I'm trying to

25 understand.

11

1              Ms. Whaley, do you have anything to add?

2              MS. WHALEY:  No, Your Honor.  I mean, the plan is

3    complete.  I filed my final report.  The proof of claim for

4    Wells Fargo was paid in full during the pendency of the case,

5    and I don't -- I mean, the lifting of the stay only allowed

6    the creditor to act on their state court rights, and so there

7    was nothing in the bankruptcy court that would prejudice the

8    Debtor from taking up any defense on a wrongful foreclosure

9    or a contract dispute in the state court.

10             THE COURT:  Right.  All right.  So I -- here's what

11   I'm going to do.  I'm going to deny the request to set aside

12   the order granting relief from the stay, but I will hold the

13   case open.  I will ask the Clerk's Office not to close the

14   case.  And if you -- your client wants to file an adversary

15   proceeding for sanctions, believing that they lied to the

16   Court in their misrepresentations, I believe that is

17   something that this Court can still handle, but it would need

18   to be done through an adversary proceeding and filing all the

19   correct procedures under Rule 11.  And then, that way,

20   there's time to actually have discovery, have a real

21   evidentiary hearing to see whether, in fact, there were

22   misrepresentations, but I don't see that -- even if

23   everything you say is correct, I don't see that setting aside

24   the order on the relief from stay accomplishes anything for

25   you given where we are in this case, where we are with this

                                12

1   plan, and the fact that you have a state court remedy ongoing

2   right now to litigate with them about whether, in fact,

3   you're in default, whether, in fact, the security deed is

4   valid.  All those things, you should go forward with at the

5   state court.

6          So I'll enter an order that denies the motion to

7   set aside the relief from stay, but I will put a deadline in

8   there for the -- I'll ask the Clerk's Office to keep the case

9   open for a certain period of time.  If you file an adversary

10  proceeding within that time, we'll go forward with it.  If

11  you don't, the case will be closed.

12         MR. MEHTA:  Thank you, Your Honor.

13         THE COURT:  Okay.

14         MR. RICHARDS:  Thank you.

15         THE COURT:  All right.  Thank you.

16      (Proceedings concluded at 11:59 a.m.)

17

18

19

20

21

22

23

24

25

1

## CERTIFICATION

2

3           I, court-approved transcriber, certify that the

foregoing is a correct transcript from the electronic sound

4

recording of the proceedings in the above-entitled matter.

5

6

7    /s/ Alicia Jarrett                        9 November 2012

8   Alicia Jarrett, Transcriber                    Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

14